This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Henry Maldonado appeals his conviction in the Lorain County Court of Common Pleas, which found him guilty of murder, abuse of a corpse, and tampering with evidence. This court affirms.
 I.
On November 23, 1999, at approximately 8 p.m., firefighters discovered the body of fifteen-year-old Virginia Velez in a field behind a residential neighborhood in Lorain, Ohio. The body was burned. The coroner later determined that Virginia had been strangled first, then her body was set on fire. Just two hours before the grisly discovery, Virginia was with two girlfriends at one girl's home. Virginia told the girls that she was going to see her sometimes-boyfriend Henry Maldonado, who lived a few blocks away. The field where Virginia's body was found was directly behind Maldonado's house.
The police investigation included interviews with a number of persons who knew both Virginia and Maldonado. The police also received a tip that Maldonado was seen depositing a garbage bag behind a local convenience store, possibly disposing of it in the dumpster. The police did recover a garbage bag from the dumpster. It contained certain items known to belong to Virginia. The police uncovered sufficient evidence implicating Maldonado that a grand jury indicted him on two counts of murder, one count of aggravated murder, abuse of a corpse, and tampering with evidence.
On December 11, 2000, the case against Maldonado proceeded to a jury trial. Numerous witnesses appeared on behalf of the state, including the coroner, police officers, several of Virginia's relatives, and a number of teenage friends of Maldonado and Virginia. Maldonado offered nothing in his own defense. The jury returned guilty verdicts on all counts. The aggravated murder count and the two counts of murder were merged. The trial court sentenced Maldonado to consecutive terms of twenty years to life for aggravated murder, three years for tampering with evidence and twelve months for abuse of a corpse.
Maldonado filed the instant appeal, assigning six errors. We have rearranged them for ease of discussion.
 II. FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING DEFENSE COUNSEL'S CHALLENGE FOR CAUSE OF A JUROR AFTER THE JUROR ESTABLISHED A BIAS IN FAVOR OF POLICE OFFICERS.
During voir dire, one of the prospective jurors stated that she had a bias in favor of the police because some of her family members are police officers. When asked if she could follow the judge's order to set aside any bias, the juror said she could not honestly say, but she would try. Defense counsel asked the court to discharge the juror for cause. After further inquiry by the defense and the court, the court declined to discharge the juror for cause. After other jurors were discharged for cause, the defense used a peremptory challenge to discharge this juror.
Maldonado now argues that the court erred in failing to discharge the juror for cause. Where a trial court refuses to discharge a juror for cause, a defendant may challenge the ruling on appeal if the defendant exhausts his peremptory challenges before the full jury is seated. Statev. Eaton (1969), 19 Ohio St.2d 145, paragraph one of the syllabus. Maldonado has established that he exhausted his peremptory challenges before the jury was seated.
The Supreme Court of Ohio has summarized the appropriate review on this issue as follows:
 Trial courts have discretion in determining a juror's ability to be impartial. * * * R.C. 2313.42(J) states that good cause exists for the removal of a prospective juror when "he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." A prospective juror who has been challenged for cause should be excused "if the court has any doubt as to the juror's being entirely unbiased." R.C. 2313.43. * * * However, a ruling "will not be disturbed on appeal unless it is manifestly arbitrary * * * so as to constitute an abuse of discretion."
(Internal citations omitted.) State v. Cornwell (1999), 86 Ohio St.3d 560,563. An abuse of discretion is more than mere error. It must involve "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
In the instant case, the challenged juror repeatedly stated that she would try to follow the court's instruction as to the credibility of witnesses but that she could not state for certain that she would be able to do so. Further questioning resulted in the juror saying she was not sure whether it would be difficult to be impartial. "Where * * * a juror gives conflicting answers, it is for the trial court to determine which answer reflects the juror's true state of mind." State v. Jones (2001),91 Ohio St.3d 335, 339, citing State v. Webb (1994), 70 Ohio St.3d 325,338.
This court cannot determine that the trial court's decision not to discharge the juror for cause was arbitrary and an abuse of discretion.
The first assignment of error is not well taken, and it is overruled.
 III. FIFTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN ALLOWING THE STATE TO [ELICIT] TESTIMONY REGARDING THE FACT THAT TYRONE PRICE HAD TAKEN A COMPUTER VOICE STRESS ANALYSIS TEST TO DETERMINE WHETHER OR NOT HE WAS TELLING THE TRUTH AND THE PROSECUTOR COMMITTED MISCONDUCT WHEN HE ELICITED TESTIMONY VOUCHING FOR THE CREDIBILITY OF STATE'S WITNESS TYRONE PRICE.
The state's strongest evidence against Maldonado came from the testimony of Tyrone Price, a teenage friend of Maldonado. Price testified that he saw Maldonado strangle Virginia, drag the body into the open field, and douse it with rubbing alcohol. Price initially told police investigators two different stories, neither of which implicated Maldonado in the murder. Price finally cooperated with the police as part of a plea agreement. According to the deal, Price would be charged only with tampering with evidence and would be prosecuted in juvenile court, rather than as an adult offender. As part of the plea agreement, Price had to pass a voice stress test to establish his truthfulness.
During his testimony Price began to state, without solicitation, that he had taken the polygraph test. Defense counsel objected when Price said, "I took a lie --." The objection was sustained and the statement was stricken. Later, a detective testified about his investigation in the case. Defense counsel strongly challenged the quality of Price's testimony, and suggested that the police prematurely identified Maldonado as the primary suspect, notwithstanding Price's prior contradictory statements to police. In an attempt to restore the detective's credibility, the prosecution announced at sidebar its intention to ask the detective on re-direct if he believed Price's story and why.
Defense counsel strongly objected to the prosecution's announced intention to question the detective about the methods the police used to corroborate Price's story. The court allowed this line of questioning to proceed. The detective stated that he believed Price's third interview which incriminated Maldonado, "[b]ecause he was tested." Defense counsel objected, but the court overruled the objection. After a sidebar, the court refused to strike the testimony.
Now Maldonado argues that such a ruling constitutes reversible error because, with certain exceptions not present here, the results of a polygraph test are inadmissible, even for purposes of impeachment or corroboration. Maldonado asserts that pursuant to State v. Souel (1978),53 Ohio St.2d 123, syllabus, unless both parties stipulate to admitting the results of a polygraph examination, the results are not admissible. In the instant case, Price began to state that he had taken a lie detector test. The trial court properly struck this testimony. However, the trial court overruled the objection to the detective's statement that Price "was tested." This statement implied that Price passed the test and the police then found his story sufficiently credible to investigate Maldonado for the murder.
In cases where the court sustained defense counsel's objection to such testimony and provided a corrective jury instruction or where defense counsel did not bother to object, the reviewing court did not find reversible error. See State v. Jones (2001), 91 Ohio St.3d 335, 344
(objection sustained and corrective instruction given); State v. Spirko
(1991), 59 Ohio St.3d 1, 6-7 (no objection, statement solicited by defense counsel); State v. Jackson (May 21, 1999), Sandusky App. No. S-98-032, unreported (no objection by defense counsel); State v. King
(June 30, 1997), Washington App. No. 96 CA 39, unreported (objection sustained).
In the instant case, the trial court overruled defense counsel's objection to testimony that Price was tested to establish his credibility. While the better practice would be to sustain the objection and strike the detective's statement that Price was tested, this court cannot conclude that the brief mention of the test, without further explanation or detail, was prejudicial. Given the extensive evidence against Maldonado, there is no reasonable probability that without the mention of the polygraph, the outcome would have been different. SeeState v. Rowe (1990), 68 Ohio App.3d 595, 611.
Maldonado's fourth assignment of error is not well taken, and it is overruled.
 IV. THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AND COUNSEL WAS INEFFECTIVE IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF PRIOR BAD ACTS.
 FOURTH ASSIGNMENT OF ERROR
 APPELLANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN TRIAL COUNSEL FAILED TO REQUEST THAT THE TRIAL COURT GIVE THE JURY A LIMITING INSTRUCTION EXPLAINING THE PROPER USE OF PRIOR BAD ACTS EVIDENCE.
Maldonado argues that the trial court erroneously admitted evidence of other bad acts by Maldonado and that his trial counsel failed to object to the introduction of the evidence or to request a limiting instruction to the jury about such evidence. According to Maldonado, such a failure by counsel rendered his assistance constitutionally ineffective.
Evid.R. 404(B) prohibits the use of evidence of prior bad acts by the accused to show action in conformity therewith in the instant offense. Such evidence "may, however, be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. See, also, State v.Lowe (1994), 69 Ohio St.3d 527, 530.
Maldonado suggests that the trial court admitted testimony that he had previously physically abused Virginia. However, almost every reference cited in his appellate brief is testimony that Maldonado allegedly told others of his plan to kill Virginia. A party's statement against interest is admissible pursuant to Evid.R. 801(D)(2). Such testimony also establishes Maldonado's intent to commit the crime. One witness testified that Maldonado admitted to killing a girl and setting the body on fire. Another testified of Maldonado's intent to kill another girlfriend. Such testimony establishes identity and absence of mistake, and is admissible for such purposes pursuant to Evid.R. 404(B).
Maldonado cites to only one witness who testified to other acts of violence by Maldonado against Virginia. However, the court struck virtually all of the testimony in this regard on the basis that the witness did not have personal knowledge of any such bad acts. Furthermore, the defense put Maldonado's character in issue when counsel asked witnesses if Maldonado was a "good guy." Evid.R. 404(A) precludes admission of evidence concerning the defendant's character, except where the defendant introduces evidence of his own character or where the state offers evidence to rebut the defendant's evidence on his character. When defense counsel asked witnesses if Maldonado was a "good guy," the prosecution was permitted to introduce character evidence to rebut that testimony.
This court's review of the record does not indicate that the court erred in admitting any of the bad acts evidence. Each was admissible under one of the exceptions in Evid.R. 404.
Maldonado also claims that his trial counsel was ineffective for failing to object to the bad acts evidence. In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate both deficient performance and resulting prejudice. Strickland v.Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. To establish prejudice, the defendant must demonstrate that it is reasonably probable that the professionally unreasonable performance caused him to lose what he otherwise would have won. State v. Radcliff (May 3, 2000), Summit App. No. 19704, unreported, at 5, citing United States v. Morrow (C.A.6 1992), 977 F.2d 222, 229. Because we have determined that the evidence was admissible, trial counsel's failure to object to its introduction cannot be deemed to constitute deficient performance.
The third assignment of error is overruled.
Maldonado also argues that his trial counsel was constitutionally ineffective in failing to seek a limiting instruction that the jury must not view the bad acts evidence as establishing action in conformity therewith. This court cannot agree that defense counsel performed below a reasonable professional standard when counsel did not to ask for such a limiting instruction under the circumstances. First, we reiterate our obligation to presume that counsel acted reasonably and to give deference to counsel's right to engage in trial strategy. See Strickland,466 U.S. at 689, 80 L.Ed.2d at 694-695. Numerous references to bad acts could properly be used to establish motive, intent, identity, and absence of mistake. Under such circumstances, it is likely that defense counsel engaged in sound trial strategy in declining to ask for a limiting instruction. Any such instruction would simply emphasize that the bad acts evidence could properly be viewed as establishing motive, identity, and/or absence of mistake, thus bolstering the state's case.
Given the facts and circumstances of this case, this court cannot say that defense counsel's performance fell below a reasonable level of performance or that Maldonado was prejudiced thereby. The fourth assignment of error is not well taken, and it is overruled.
 V. SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND DENIED THE DEFENDANT HIS RIGHT TO BE PRESENT AT A CRITICAL STAGE OF THE PROCEEDINGS WHEN THE TRIAL COURT GAVE SUPPLEMENTAL JURY INSTRUCTIONS IN RESPONSE TO A JURY QUESTION WITHOUT CONSULTING COUNSEL.
Maldonado argues that the trial court erred in answering two jury questions without consulting either the state or the defense with regard to how they would like the court to answer the questions. According to Maldonado's appellate brief, the trial court answered in writing two written jury questions. The appellate brief allegedly quotes the questions and the answers. However, there is nothing in the record before us to indicate that there were two questions, what the questions might be, or whether the court consulted counsel for both sides prior to answering the questions. In fact, the trial court's journal entry memorializing the jury's verdict states that "[d]uring deliberations, jury presented question to Court, which Court answered." (Emphasis added.) In its appellate brief, the state claims that counsel for both sides met with the judge in chambers, off the record, to discuss the jury's question prior to the judge rendering his written answer.
Because the resolution of this matter requires resort to evidencedehors the record, this court cannot address the matter on direct appeal. See State v. Cooperrider (1983), 4 Ohio St.3d 226, 228; App.R. 12(A)(1)(b).
The second assignment of error is overruled as beyond the scope of this appeal.
 VI. SIXTH ASSIGNMENT OF ERROR
 THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO CONVICT APPELLANT.
A review of the weight of the evidence determines whether the state has met its burden of persuasion. State v. Angle (June 2, 1999), Medina App. No. 2875-M, unreported, at 7. This Court has observed that "becausesufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis sic.) State v. Roberts
(Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4. Because this court finds that the conviction was supported by the weight of the evidence, we necessarily find that there was sufficient evidence to support appellant's conviction.
 When an appellate court reviews the weight of the evidence [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Statev. Ali (Apr. 28, 1999), Summit App. No. 19119, unreported, at 9.
The evidence presented at trial established that Maldonado told several persons that he intended to kill Virginia. Several witnesses testified that Maldonado stated he intended to kill women and set the bodies on fire in order to destroy fingerprint evidence. Two witnesses testified that just prior to her death Virginia went to see Maldonado because he had a gift to give her. Price testified that he actually witnessed Maldonado kill Virginia, and douse the body with alcohol. A friend of Price and Maldonado, who drove them to a convenience store to steal the beer, testified that Maldonado got a trash bag at Price's house and disposed of it behind the convenience store. Pillowcases and sheets from Maldonado's home matched the pillowcase with Virginia's blood found in the trash bag retrieved from the convenience store dumpster.
Although there was some conflicting evidence from the various witnesses, this court cannot conclude that the jurors clearly lost their way in rendering guilty verdicts on each of these three counts. The evidence did not weigh heavily against convicting Maldonado for aggravated murder based on evidence that Maldonado (1) purposefully and with prior calculation and design, (2) caused the death of Virginia Velez. See R.C. 2903.01(A). Likewise, the weight of the evidence supported a conviction for tampering with evidence, based on a finding that Maldonado, (1) knowing that an official was likely to be instituted, (2) concealed and removed Virginia's clothing and burned her body "with purpose to impair its value or availability as evidence[.]" See R.C.2921.12(A)(1). The weight of the evidence supported the jury's conclusion, beyond a reasonable doubt, that Maldonado treated Virginia's corpse "in a way that would outrage reasonable community sensibilities." R.C. 2927.01(B).
This court cannot conclude that the jury lost its way in rendering guilty verdicts on any of these counts.
The sixth assignment of error is not well taken and it is overruled.
 VII.
Having overruled the assignments of error, we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BATCHELDER, P.J., SLABY, J. CONCURS.