OPINION
Appellant Jonathan Ritchie appeals three judgment entries of conviction and sentencing of the Tiffin Municipal Court, Seneca County, Ohio, issued on November 14, 2001, whereby that court found him guilty of three counts of criminal damaging and sentenced him accordingly.
The relevant facts of this case are as follows. On August 17, 2001, Appellant Ritchie drove his car, a red Chevelle, to Rosenblatt's Tires and Steel on Miami Street in Tiffin, Ohio, wanting to sell his vehicle to Rosenblatt's for $500.00. Clinton Harrod, co-owner of Rosenblatt's, test drove the car and then informed Ritchie that he would not purchase the car. However, Harrod told Ritchie that he could return the following day and ask Harrod's father, the other co-owner of Rosenblatt's, if he wanted to purchase the car. After this discussion, Harrod went inside the office, and Ritchie got in his car to leave. As Ritchie left Rosenblatt's, his car sprayed stones from Rosenblatt's gravel driveway on various cars and trucks in the parking lot, allegedly causing damage to some of the vehicles. The police were summoned to Rosenblatt's, and photographs were taken of the scene.
Ritchie was charged with three separate counts of criminal damaging in violation of Revised Code section 2909.06(A)(1) on August 20, 2001. A bench trial on all three counts was held on October 30, 2001. At this trial, Harrod testified that immediately preceding Ritchie's departure, he informed Ritchie that the Chevelle's front fender "jumped up" six inches while he was driving it and that he did not believe that the car was worth $500.00. Harrod and other witnesses for the State testified that Ritchie "peeled out" of the driveway, squealing his tires. In addition, these witnesses testified that gravel was sprayed on their vehicles and various damage occurred to the vehicles because of the gravel.
After counsel for Ritchie made a Rule 29 motion for acquittal, which was denied by the court, Ritchie testified that he did not realize that he peeled out of the driveway but that he did leave quickly because he had only four minutes to get to work. Ritchie further testified that he did not notice any gravel being sprayed by his car but that he did notice a small cloud of dust behind his car. After hearing the evidence, the trial court found Ritchie guilty of all three counts of criminal damaging. Ritchie was subsequently sentenced by the trial court on November 14, 2001. This appeal followed, and Ritchie now asserts three assignments of error.
THE TRIAL COURT'S JUDGMENTS OF GUILTY WERE AGAINST THE MANIFEST WEIGHTOF THE EVIDENCE, THEREBY RESULTING IN REVERSIBLE ERROR.
THE TRIAL COURT REVERSIBLY ERRED WHEN IT DENIED DEFENDANT'S MOTION FORACQUITTAL, UNDER CRIM. R. 29(A), WITH REGARD TO ALLEGED VICTIM RONALDLEONARD, AS THE EVIDENCE IN THE STATE'S CASE WAS INSUFFICIENT TO SUSTAINA CONVICTION FOR THE CHARGED OFFENSE.
IN AN ABUSE OF ITS DISCRETION, THE TRIAL COURT REVERSIBLY ERRED WHEN ITDENIED A DEFENSE MOTION FOR A MISTRIAL, REGARDING AN ALLEGED VIOLATION OFTHE TRIAL COURT'S ORDER FOR SEPARATION OF WITNESSES.
 First Assignment of Error
In his first assignment of error, Ritchie contends that the judgments of guilty as to all three counts were against the manifest weight of the evidence. Specifically, Ritchie maintains that the State failed to show the required mental state of "knowingly" beyond a reasonable doubt. In reviewing whether the evidence produced was sufficient, "`the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Statev. Campbell (2000), 90 Ohio St.3d 320, 329 (quoting Jackson v. Virginia
(1979), 443 U.S. 307, 319). Thus, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." State v. Jenks (1991),61 Ohio St.3d 259, 273.
The statute by which Ritchie was convicted states:
No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent:
Knowingly, by any means[.] R.C. 2909.06(A)(1).
"Knowingly" is defined by statute as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
Although Ritchie testified that he was in a hurry to get to work and only "threw some dirt", the photographic evidence depicts stones on the hood of one car and on the dashboard of another car. The photographs also show tread marks on the driveway. In addition, Clinton Harrod testified that Ritchie's car threw stones, that Ritchie fishtailed his car in the driveway, and that he squealed his tires as he was leaving. Harrod further testified that Ritchie made the tread marks in the driveway with his car. Michael Whitman, a witness for the State, testified that he saw Ritchie leave Rosenblatt's. He also testified that when Ritchie "took off" he created a "shower of rocks", which landed on Whitman's vehicle as well as other cars. Whitman further testified that the rocks cracked the windshield of his truck. However, no photographs were taken of Whitman's windshield. Reyes Garcia also testified that Ritchie "peeled out" of the driveway, causing rocks to fly everywhere with cars all around the driveway. Garcia testified that the rocks scratched his truck and hit other vehicles. Moreover, Ronald Leonard testified that he heard a car "squealing and peeling leaving out the driveway." Although Leonard did not know who was driving, he did notice stones on top of his car and on other cars parked at Rosenblatt's.
Regardless of whether Ritchie was angry or purposely caused rocks and gravel to be sprayed on the property of others, the trial court could reasonably conclude that Ritchie was aware that his conduct would probably cause the rocks to be disturbed. In addition, the trial court, as the finder of fact, could reasonably reach the conclusion that it did: "A person who continues to spin his tires in a stone lot with vehicles in a near vicinity is aware that his conduct will probably cause or at least create a substantial risk of physical harm to the vehicles in the area." Thus, the trial court did not commit reversible error by finding that the requisite mental state of "knowingly" was shown beyond a reasonable doubt. Therefore, the first assignment of error is overruled.
 Second Assignment of Error
Rule 29(A) of the Rules of Criminal Procedure states that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense[.]" Accordingly, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus; see also Statev. Boddie (Sept. 6, 2001), Allen App. No. 1-2000-72, unreported, 2001 WL 1023107. However, as this Court has previously held, the Bridgeman
standard "must be viewed in light of the sufficiency of evidence test[.]"State v. Foster (Sept. 17, 1997), Seneca App. No. 13-97-09, unreported, 1997 WL 576353 (citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus). In Jenks, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra.
As previously discussed herein, Ohio's criminal damaging statute, R.C.2909.06, states in pertinent part that "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent[.]" Ritchie contends that the State failed to submit evidence to indicate any causation or creation of a substantial risk of physical harm with regards to the criminal damaging charge involving a vehicle owned by Ronald Leonard. Ritchie maintains that no discernible diminution in value of Mr. Leonard's vehicle occurred due to his actions because Mr. Leonard no longer owned the vehicle at the time of the trial as it was no longer operable. Thus, Ritchie asserts that diminishing "the value of a worthless item" is not possible.
At least two appellate districts have found that "loss of value from observable damage may be inferred," as well as "when the damage interferes with its use or enjoyment." State v. Maust (1982),4 Ohio App.3d 187, 189; City of Akron v. Butler (Sept. 4, 1985), Summit App. No. 12032, unreported, 1985 WL 10850. Here, Mr. Leonard testified that his car, a 1981 Olds Cutlass, was parked at Rosenblatt's. Although he did not witness Ritchie leave Rosenblatt's, he testified that he "heard the squealing and peeling leaving out the driveway." Upon walking to the driveway, Mr. Leonard discovered stones on top of his car. Further, Mr. Leonard testified that when the police officer took pictures of his car, he noticed that the car was scratched although it was not scratched prior to Ritchie leaving Rosenblatt's. In addition, State's Exhibits 9 10, photographs of Mr. Leonard's vehicle, show the vehicle with several stones on top of the hood.
The current value of the car and the fact that the vehicle became inoperable one month after the incident in question are irrelevant to whether it was damaged by Ritchie on August 17, 2001. Mr. Leonard's testimony and the admitted exhibits were sufficient to demonstrate that his vehicle was damaged, having had the paint scratched. A reasonable factfinder could have discerned that such damage interfered with Mr. Leonard's full enjoyment of the vehicle, even if only for one month. Thus, the trial court did not err in denying Ritchie's motion for acquittal as to the count involving Mr. Leonard's vehicle. Therefore, the second assignment of error is overruled.
 Third Assignment of Error
Ritchie next contends that the trial court erred when it did not grant his motion for a mistrial based upon a violation by witnesses for the State of the court's order for separation of the witnesses. The Rules of Evidence require a trial court to order that witnesses be separated if either party so requests. Evid.R. 615. The purpose for such an order is to ensure "`that [witnesses] cannot hear the testimony of other witnesses,' Evid.R. 615, and tailor their own testimony accordingly. Thus, a spectator or witness may not tell a prospective witness what has taken place in court if the judge has ordered separation of witnesses."State v. Waddy (1992), 63 Ohio St.3d 424, 434 (citing State v. Spirko
(1991), 59 Ohio St.3d 1, 14). When a separation order is violated, the trial court may take corrective measures. Such "[c]orrective measures open to the court when a separation order is violated include `permitting the transgression to reflect upon the witness's credibility.'" State v.Franklin (1991), 62 Ohio St.3d 118, 127 (quoting 1 Weissenberger's Ohio Evidence (1990) 91, Section 615.3). Another corrective measure is for the trial court to declare a mistrial. However, "[m]istrials need be declared only when the ends of justice so require and a fair trial is no longer possible." Franklin, supra (citing Illinois v. Somerville
(1973), 410 U.S. 458, 462-463; Arizona v. Washington (1978), 434 U.S. 497,505-506).
At the beginning of the trial in the case sub judice, the court ordered that all testifying witnesses remain outside of the courtroom until called to testify. The first witness to testify was Clinton Harrod. Michael Whitman testified after Harrod, and Reyes Garcia followed Whitman. During cross-examination of Garcia, counsel for Ritchie inquired as to whether Garcia saw Harrod in the hallway before coming in the courtroom to testify. When Garcia responded in the affirmative, counsel then asked whether he spoke with Harrod. Again, Garcia answered affirmatively. When asked what was discussed, Garcia stated, "I told him what happened, what happened in here, and everything. And I told him I was just going to tell them what I saw. And that's what he asked me." Counsel then made a motion for a mistrial. The court stated that it wanted to know the time frame of these events before ruling. Both the court and counsel for Ritchie further questioned Garcia on the matter. Garcia's testimony revealed that he and Harrod drove to court that day together. Garcia testified that he spoke with Harrod about his testimony while driving to court that day. However, he also acknowledged that he had talked with Harrod after Harrod testified, but Garcia maintained that this discussion was about a book that he was reading about Texas, where he was planning to vacation. Garcia further testified that Harrod did not say anything about the testimony that he had given while under oath that day.
The trial court denied Ritchie's motion for a mistrial, stating that any possible violation "goes to the weight of the evidence." This Court finds that the trial court did not err in choosing to permit the transgression to reflect upon Garcia's credibility rather than declaring a mistrial. Moreover, the circumstances surrounding the discussion between Garcia and Harrod do not reflect that a fair trial was no longer possible, especially in light of the fact that this was a bench trial. Therefore, the third assignment of error is overruled.
For these reasons, the judgments of the Tiffin Municipal Court are affirmed.
Judgments affirmed.
HADLEY and WALTERS, JJ., concur.