[Cite as *Columbus v. Codecido*, 2016-Ohio-1327.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | No. 15AP-774 |
| | | (M.C. No. 2015 CRB 3554) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Emilio A. Codecido, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 29, 2016

**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, *Lara N. Baker*, and *Melanie R. Tobias*, for appellee. **Argued:** *Melanie R. Tobias*

**On brief:** *The Ohio State University, Student Legal Services,* and *Peter J. Scranton*, for appellant. **Argued:** *Peter J. Scranton*

APPEAL from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Emilio A. Codecido, appeals from a judgment of the Franklin County Municipal Court convicting him of assault. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On February 15, 2015, Codecido was charged with two counts of assault, in violation of Columbus City Code 2303.13, both first-degree misdemeanors. One count charged Codecido with assaulting Mark Aalyson, and the other count charged Codecido with assaulting Susan Cassidy. The charges arose from an altercation between Codecido and staff at the Columbus Athenaeum ("Athenaeum"), on February 14, 2015. The matter

proceeded to a bench trial in June 2015. Before the presentation of evidence, plaintiff-appellee, the City of Columbus ("the city"), moved for the separation of witnesses. The trial court granted the motion, and it directed the parties to instruct witnesses to remain outside the courtroom until called to testify and not to discuss the case between themselves during the trial. Thereafter, the following evidence was adduced at trial.

{¶ 3} Aalyson, the Athenaeum's president, testified as follows: On February 14, 2015, the Athenaeum hosted "The Eye Ball," an annual gala for The Ohio State University College of Optometry students and their guests. As the Athenaeum's president, Aalyson generally oversaw The Eye Ball, making sure everything ran smoothly, from the preparation and serving of the food, to general building security and function. Consistent with Athenaeum policy, a Columbus police officer was present at The Eye Ball because alcohol was served. This special duty police officer had to leave approximately 30 minutes before the event's conclusion at 11:00 p.m. because the officer's superior called him in for regular duty due to staffing issues.

{¶ 4} At approximately 11:00 p.m., when most guests already had departed, Aalyson began to walk the building to ensure things were in order. Aalyson approached the stairwell area near the main entrance to the building and saw a group of approximately six women and two men congregating. The two men were arguing. Aalyson informed the group that the party was over and it was time for them to leave. Aalyson briefly walked away from the group to check a set of doors, and when he returned to the group the two men's aggression toward each other had escalated. Aalyson intervened by positioning himself between the two men and encouraging them to leave. Aalyson tried to non-forcibly guide one of the men, later identified as Codecido, to the exit. Aalyson denied putting Codecido in a "choke hold" as part of his effort to get Codecido to leave. He was able to get Codecido to an exit door, when Codecido turned and asked a woman to go with him. The woman denied the request, and Codecido "became more visibly enraged." (Tr. 28.) Aalyson repeated his request for the group to leave, and Codecido stepped outside.

{¶ 5} Aalyson tried to close the door, but Codecido blocked the door with his foot and repeatedly spit on Aalyson. Codecido said, "I just spit all over you. How do you like that?" (Tr. 30.) Aalyson decided to exit the building with Codecido. Codecido was

verbally abusive, and Aalyson told Codecido that police were being called.  As Aalyson began to go back into the building, he "felt a blow on the right side of [his] head, * * * [his] head snapped, and [he] went to the ground." (Tr. 32, 34.)  Aalyson's face was bloodied and bruised. (Tr. 34.)  Aalyson remembered "sort of seeing stars." (Tr. 33.)  The next thing Aalyson remembered was being inside the building and seeing two Columbus police officers approach him.  One of the officers asked Aalyson who hit him, and he responded, "I didn't get hit." (Tr. 33.)

{¶ 6}  Cassidy, the Athenaeum's general manager, testified as follows:  She was working at her desk in the Athenaeum's basement during The Eye Ball, when she heard a loud noise at approximately 11:20 p.m.  Cassidy ran up to the first floor and saw Aalyson trying to push Codecido out the door.  Aalyson held Codecido in a choke hold as part of his effort to remove Codecido from the building.  At some point during this confrontation, Codecido "pushed [Cassidy] a little" and spit on her face. (Tr. 47.)  Cassidy left the area to retrieve a key so she could lock the door once Codecido was outside.

{¶ 7}  When Cassidy returned, Aalyson and Codecido were outside, and Cassidy saw Codecido hit Aalyson while they both were on the ground.  Aalyson was on his back and Codecido was on top of him.  Cassidy did not see Codecido strike Aalyson while the two were standing.  Two other Athenaeum employees, Mark Stought and Juan Rios, ran out to help, and the fight ceased.  Aalyson and the employees reentered the building, and Codecido also tried to reenter.  Cassidy observed swelling and blood near Aalyson's eye and blood around his lip.  Aalyson appeared to have been punched more than once in the face.  Aalyson's clothes were dirty, but Cassidy did not notice whether Codecido's clothes were soiled.

{¶ 8}  Cassidy, Stought, and Rios tried to prevent Codecido from reentering.  Codecido spit at them, and Cassidy picked up a wet floor sign to block the spit.  Codecido struck the sign, causing it to hit Stought's face.  When the police arrived, Codecido immediately put his hands behind his back.  Aalyson displayed symptoms of a concussion and did not immediately realize Codecido had struck him.  Codecido did not appear injured.

{¶ 9}  Cassidy admitted to talking with Aalyson about the case during the trial.  Aalyson made one statement to her regarding his testimony.  He told her "[t]hey asked

him about a choke hold." (Tr. 59.) After Cassidy completed her testimony, Codecido's counsel moved to strike her testimony on the basis that Aalyson had discussed his testimony with her. The trial court denied the motion to strike.

{¶ 10} Margaret Nikituk, an Ohio State optometry student, testified as follows: Nikituk invited her friend Codecido to attend The Eye Ball as her guest. Near the party's end, Nikituk was in the Athenaeum's lobby with Codecido and a few others. Codecido, who appeared to be intoxicated, was in an argument with Eric Ward. Codecido was "very angry and a little bit out of control." (Tr. 13.) Aalyson approached the group and put Codecido "in a choke hold," trying to remove him from the building. (Tr. 13.) Two or three other Athenaeum workers helped Aalyson in his effort to remove Codecido, but Codecido resisted. Nikituk lost sight of Codecido and Aalyson after they exited the building. Nikituk did not see anyone throw a punch. When Aalyson reentered the building, he was dirty, had a bloodied face, and "seemed very disoriented * * * like something had happened." (Tr. 16.) Aalyson appeared to be "very injured." (Tr. 16.) Nikituk specifically noted that Aalyson's hands looked injured.

{¶ 11} Columbus Police Officer Christopher Francis testified regarding his response to the altercation at The Eye Ball. When Officer Francis approached the Athenaeum, he saw a male, later identified as Codecido, outside the building trying to get inside. Codecido's arm was inside the door, but persons inside were holding the door shut. Codecido was angry. Aalyson, who was bleeding from his right eye and his lip, ran outside and told Officer Francis that Codecido had assaulted him. Aalyson's injuries were consistent with being punched multiple times in the face. But the injuries also could have been from Aalyson falling on the ground. Codecido had the odor of alcohol on his breath, slurred speech, bloodshot eyes, a flushed face, and was having difficulty maintaining his balance. Based on Aalyson's statement and his visible injuries, Officer Francis arrested the intoxicated Codecido.

{¶ 12} Codecido testified on his own behalf. He and Ward were arguing at The Eye Ball when Aalyson put him in a "choke hold" and "drug" him outside the building. (Tr. 97-98.) Aalyson slipped and hit his face on the ground as the two were descending the steps outside the building. Codecido denied ever punching Aalyson. A man pulled Aalyson into the building. Codecido stayed outside for a few minutes, and then decided to

reenter the building to retrieve his coat. Aalyson was "furious" at Codecido and pushed him around. (Tr. 98.) Codecido was able to get his arm inside, but two men closed the door on his arm, which caused bruising.

{¶ 13} When the police arrived, the men released the door, and Codecido put his arms behind his back. The police arrested Codecido and took him to jail. When Codecido was released from jail three days later, he searched the area around the Athenaeum for security cameras. He noticed a camera across the street from the Athenaeum, but, when he inquired about that camera, he learned it did not have sufficient range to cover the Athenaeum.

{¶ 14} The trial court found Codecido guilty of assaulting Aalyson, but not guilty of assaulting Cassidy, and it sentenced him to two years of community control.

{¶ 15} Codecido timely appeals.

## II. Assignments of Error

{¶ 16} Codecido assigns the following errors for our review:

> [1.] The trial judge erred when he overruled a motion to strike testimony for violations of the motion for separation of witnesses.

> [2.] The findings of fact stated by the trial court in its decision to convict appellant of assault, a first-degree misdemeanor was against the manifest weight of the evidence.

> [3.] The findings of fact stated by the trial court in its decision to convict appellant of assault, a first-degree misdemeanor was against the sufficiency of the evidence.

## III. Discussion

{¶ 17} For ease of discussion, we address Codecido's three assignments of error in reverse order.

### A. Third Assignment of Error – Sufficiency of the Evidence

{¶ 18} Codecido's third assignment of error alleges his assault conviction was not supported by sufficient evidence. Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution,

would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. "[I]n a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

{¶ 19} Codecido was convicted of assault, in violation of Columbus City Code 2303.13, a first-degree misdemeanor. Columbus City Code 2303.13(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to another." Columbus City Code 2301.01(C) defines "physical harm to persons" to mean "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Aalyson testified that Codecido verbally abused him after the two exited the Athenaeum. Then, when Aalyson began to go to back into the building, Aalyson "felt a blow on the right side of [his] head," causing him to fall to the ground. (Tr. 32.) Although Aalyson did not directly state that Codecido struck him, Codecido was the only person near him when he was struck. Additionally, Cassidy testified that Codecido struck Aalyson when they were outside on the ground. Both Aalyson and Cassidy testified that Aalyson's face was battered as a result of Codecido hitting him. Construing the testimony of Aalyson and Cassidy most favorably for the city, their testimony provided sufficient evidence for the trial court to find that Codecido committed assault in violation of Columbus City Code 2303.13.

{¶ 20} Because sufficient evidence supported Codecido's assault conviction, we overrule his third assignment of error.

**B. Second Assignment of Error – Manifest Weight of the Evidence**

{¶ 21} In his second assignment of error, Codecido asserts his assault conviction was against the manifest weight of the evidence. When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict

is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the trial court in a bench trial, " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Thus, the finder of fact may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 22} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence in only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 23} In support of his contention that his conviction was against the manifest weight of the evidence, Codecido argues that the many inconsistencies in the evidence demonstrate the trier of fact clearly lost its way. Codecido asserts there are three central facts in this case—the choke hold, the assault incident, and the assault aftermath—and that the witnesses' testimony varied as to these facts. Codecido is correct that the testimony as to these facts was not entirely consistent between the witnesses and even was contrary on certain facts. Codecido, Nikituk, and Cassidy testified that Aalyson placed Codecido in a choke hold as part of his effort to remove Codecido from the Athenaeum. Aalyson denied that he placed Codecido in a choke hold. Codecido denied that he ever

struck Aalyson; he testified that Aalyson injured himself by falling to the ground and hitting his face on the steps.  Aalyson and Cassidy testified that Codecido struck Aalyson in the face or head.  Aalyson's testimony indicated that Codecido struck him when he was standing; however, Cassidy testified that Codecido struck Aalyson when the two were on the ground.  Additionally, Aalyson testified that, after Codecido struck him, his first memory was of the police approaching the building.  Aalyson testified that he told the police he had not been hit.  Officer Francis testified that Aalyson ran outside the building and said that Codecido had assaulted him.  Thus, Codecido correctly notes there were inconsistencies in the testimony concerning the altercation between Aalyson and Codecido and the circumstances surrounding that altercation.

{¶ 24} Although there were inconsistencies in the testimony at trial, those inconsistencies do not demonstrate the trial court lost its way in convicting Codecido of assault.  "A conviction is not against the manifest weight of the evidence solely because the trier of fact heard conflicting testimony."  *State v. Anderson*, 10th Dist. No. 14AP-1047, 2015-Ohio-4458, ¶ 27.  To reverse on manifest weight grounds in this case, we would need to find that a reasonable trier of fact could not find as credible the testimony of Aalyson and Cassidy indicating that Codecido struck Aalyson in the head or face.  *See State v. Brown*, 10th Dist. No. 02AP-11, 2002-Ohio-5345, ¶ 10 ("[I]t is inappropriate for a reviewing court to interfere with factual findings of the trier of fact which accepted the testimony of such witness unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.").  The evidentiary inconsistencies Codecido cites, however, did not render the testimony of Aalyson and Cassidy so unbelievable as to render the verdict against the manifest weight.  It was within the province of the trial court, as the trier of fact, to evaluate witness credibility, to resolve the inconsistencies in the evidence, and to reach a determination on the ultimate issue of fact—whether Codecido assaulted Aalyson.  This case does not present exceptional circumstances requiring this court to invoke its power to reverse the trier of fact's verdict on manifest weight grounds.

{¶ 25} Because Codecido's assault conviction was not against the manifest weight of the evidence, we overrule his second assignment of error.

### C. First Assignment of Error – Denial of Motion to Strike Testimony

{¶ 26} Codecido's first assignment of error asserts the trial court erred in not sustaining his motion to strike the testimony of Cassidy.  Codecido argues the trial court should have stricken Cassidy's testimony because Cassidy, prior to testifying, spoke with Aalyson about his previously given testimony.

{¶ 27} Evid.R. 615 generally provides that, at the request of a party or on its own motion, the court shall order witnesses excluded from the courtroom so that they cannot hear the testimony of other witnesses.  Thus, a spectator or witness may not tell a prospective witness what has taken place in court if the judge has ordered separation of witnesses. *State v. Waddy*, 63 Ohio St.3d 424, 434 (1992), citing *State v. Spirko*, 59 Ohio St.3d 1, 14 (1991).  The purpose of an order under Evid.R. 615 is to prevent witnesses from hearing the testimony of other witnesses and tailoring their testimony accordingly. *Waddy* at 434.

{¶ 28} Striking the testimony of a witness is one of multiple sanctions available to a trial court upon its discovery of a separation order violation.  *State v. Walker*, 10th Dist. No. 02AP-679, 2003-Ohio-986, ¶ 31.  But, for the court to issue a sanction against one of the parties, the moving party must show the other party engaged in misconduct.  To exclude the testimony of a witness who has violated a separation order, the movant must demonstrate that the party who called the witness "consented to, connived in, procured or had knowledge of " the witness's violation of the separation order.  *State v. Smith*, 49 Ohio St.3d 137, 142 (1990).  The sanction imposed for a violation of a separation order is within the trial court's sound discretion.  *State v. Taylor*, 1st Dist. No. C-020475, 2004-Ohio-1494, ¶ 32.

{¶ 29} Here, at the city's request, the trial court issued a witness separation order. The trial court directed the parties to instruct witnesses to remain outside the courtroom until called to testify and not to discuss the case between themselves during the trial. During Codecido's counsel's cross-examination of Cassidy, she admitted to discussing the case with Aalyson during the trial.  That conversation violated the trial court's separation order.  However, nothing in the record indicates that the city consented to, connived in, procured, or had knowledge of Cassidy's discussion of the case with Aalyson during the trial.  The absence of evidence demonstrating the city engaged in misconduct as to the

separation order weighed heavily against the trial court striking Cassidy's testimony as requested. Therefore, the trial court did not abuse its discretion in overruling Codecido's motion to strike Cassidy's testimony.

{¶ 30} Accordingly, we overrule Codecido's first assignment of error.

## IV. Disposition

{¶ 31} Having overruled all three of Codecido's assignments of error, we affirm the judgment of the Franklin County Municipal Court convicting Codecido of assault.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.

————————————